**EXHIBIT "A"**

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

JESSICA BLINKHORN, )
)
    Plaintiff, )
)   CIVIL ACTION
v. )
)   FILE No. 1:21-cv-00907-TWT
VININGS JUBILEE PARTNERS II, )
L.P., )
)
    Defendant. )

## CONSENT DECREE

This Consent Decree (this "Agreement") is made and entered into by and between Jessica Blinkhorn ("Plaintiff"), and Vinings Jubilee Partners II, L.P. ("Defendant")(Plaintiff and Defendant shall be collectively referenced as the "Parties"). This Agreement is made as a compromise between the Parties for the complete and final settlement of their claims, differences, and causes of action with respect to the dispute described below.

## PREAMBLE

**WHEREAS**, on March 4, 2021, Plaintiff asserted claims for injunctive relief against Defendant, based upon purported violations of Title III of the Americans with Disabilities Act, 42 U.S.C. 12181, *et seq*. ("ADA") and 28 C.F.R. Part 36

1

("2010 ADAAG Standards") with regard to a parcel of real property owned by Defendant and located at 4300 Paces Ferry Road, Atlanta, Georgia 30339, (Cobb County Property Appraiser's parcel number 17090900170) (the separate structures and improvements situated upon said real property shall be collectively referenced herein as the "Facilities," and said real property shall be referenced herein as the "Property"); and

**WHEREAS**, the Parties desire to compromise and fully and finally resolve and settle all actual and potential claims or litigation between them, to avoid the uncertainty, time and expense that would accompany such litigation; and

**WHEREAS**, the Parties have agreed to enter into this Agreement pursuant to which each and every claim and/or cause of action asserted or that could have been asserted by Plaintiff against Defendant shall be fully, forever, and finally released;

**NOW, THEREFORE**, in consideration of the covenants and mutual promises and agreements contained herein, and other valuable consideration, the sufficiency of which is hereby acknowledged, the Parties agree as follows:

## 1.     <u>Attorney's Fees and Costs</u>

1.1     The Parties shall execute this Agreement and Plaintiff's Counsel, The Law Office of Craig J. Ehrlich, LLC, shall prepare a Joint Stipulation to Approve Consent Decree and Dismiss with Prejudice ("Joint Stipulation") to be distributed

to all Parties for execution. Defendant agrees to pay to Plaintiff's Counsel, within fourteen (14) days of the entry by the Court of the Order Approving Consent Decree and Dismissal of Defendant with Prejudice (the "Order"), attorney's fees and costs of litigation in the amount of $5,725.00 (Five Thousand Seven Hundred Twenty-Five Dollars and No Cents). This amount is deemed to include a $300.00 (three hundred dollar) re-inspection fee to Plaintiff. Said payment shall be made payable to "The Law Office of Craig J. Ehrlich, LLC IOLTA" and delivered to The Law Office of Craig J. Ehrlich, LLC, 1123 Zonolite Road, N.E., Suite 7-B, Atlanta, Georgia 30306.

1.2    Upon delivery to Plaintiff's Counsel of the fully executed Agreement, Plaintiff shall promptly file the Joint Stipulation to Approve Consent Decree and to Dismiss with Prejudice, attaching a copy of the fully executed Agreement and proposed order of dismissal with prejudice.

1.3    Plaintiff agrees to take any and all additional steps required to obtain dismissal of the Action as set forth above. Except as set forth herein, each Party shall be responsible for payment of her or its own litigation expenses, costs and attorneys' fees.

1.4    Plaintiff and Plaintiff's Counsel acknowledge and agree that they are solely and entirely responsible for the payment and discharge of all federal, state,

and local taxes, if any, that may, at any time, be found to be due upon or as a result of the Payment hereunder. Plaintiff and Plaintiff's Counsel, and each of them, expressly acknowledge that Defendant has not made any representations regarding the tax consequences of any Payment received pursuant to this Agreement.

1.5    The Parties agree that a condition precedent for the validity of this Agreement is the Court's retaining jurisdiction to enforce the Agreement.

**2.    Alterations or Modifications to the Facilities and Property**

2.1    The Parties hereto acknowledge and stipulate that Defendant shall modify or alter the items expressly identified by and in the manner specified in Exhibit 1. The repairs or modifications identified in Exhibit 1 shall be completed in all respects no later than thirty-six (36) months from the entry of the Order. The time period for completion by Defendant shall be subject to acts of God, force majeure, or events beyond the control of Defendant, such as inability to obtain building or zoning permits, failure of the city/county or state inspectors to make inspections, city/county/state work on adjacent roadways/sidewalks which delay implementation of this Agreement, contractor defaults or work stoppages. In the event of such unforeseen circumstances, the time period for completion of the alterations or modifications in Exhibit 1 shall be extended by the number of days reasonably attributable to such delay-causing event as long as Defendant provides

notice to Plaintiff's Counsel prior to the original completion date set forth above.

2.2    Upon completion of the alterations and modifications set forth in Exhibit 1, Defendant shall provide written notice by certified or registered mail, or via electronic mail, to Plaintiff's Counsel.

2.3    If the modifications or alterations described in Exhibit 1 conflict with Georgia law, building construction standards, county or city regulations or codes, or any other statute, act, law, rule, regulation, code, standard, or state or local governing body whatsoever, Defendant shall attempt to identify and implement a reasonable alternative solution or variance should a readily achievable one exist.  If any such alternative solution is applied by Defendant, Defendant agrees to notify Plaintiff's Counsel of the same.  It is a material provision of this Agreement that Plaintiff shall approve any alternative solution(s) prior to its (or their) implementation, and further, Plaintiff's approval of any alternative solution(s) proposed by Defendant shall not be unreasonably withheld.

2.4    The Parties stipulate that after Plaintiff's Counsel receives notice of the completion of the alterations or modifications described in Exhibit 1, or after the elapse of the thirty-six (36) month time period set forth in Paragraph 2.1, above, whichever is sooner, Plaintiff may inspect the Facilities and Property to ensure that Defendant has completed the modifications or alterations described in Exhibit 1.

Defendant shall provide Plaintiff or her designated representative reasonable access to the Facilities and Property to verify completion of the work described in Exhibit 1.

2.5    If an inspection contemplated herein reveals that any of the alterations or modifications described in Exhibit 1 have been performed in a manner that does not materially comply with Exhibit 1, Plaintiff shall have the right to enforce this Agreement pursuant to Paragraph 3, below.

2.6    It is agreed by the Parties that upon all of the modifications being completed as set forth in Exhibit 1, the Facilities and Property will be deemed fully compliant with the ADA and 2010 ADAAG standards pursuant to the readily achievable standard.

3.    **Enforcement Provisions**

If Plaintiff contends that an inspection performed pursuant to Paragraph 2.4 of this Agreement reveals that any of the alterations and/or modifications described in Exhibit 1 have been performed in a manner that does not materially comply with Exhibit 1, Plaintiff shall provide notice to Defendant via certified mail at the address listed in Paragraph 6.1, below.  Defendant shall have one hundred and twenty (120) days after receipt of such notice to cure any alleged non-compliant alterations and modifications.  If Defendant does not cure the alleged non-compliant alterations or

modifications, Plaintiff shall have the right to move this Court to enforce this agreement.

4.    **<u>Compromise</u>**

The Parties agree and acknowledge that this Agreement is the result of a compromise and shall never be construed as an admission of any liability, wrongdoing, or responsibility on the part of the Released Parties (as defined in paragraph 5.1 below). Defendant expressly denies any such liability, wrongdoing, or responsibility.

5.    **<u>Release Given By Plaintiff in Favor of Defendant</u>**

5.1    In exchange for the good and valuable consideration set forth herein, Plaintiff and her respective agents, members, successors, assigns, parent entities, subsidiary entities, heirs, officers, predecessors, directors, affiliated persons and/or entities, and anyone claiming by or through them (collectively, the "Releasing Parties"), hereby fully and finally releases, acquits, satisfies, and discharges Defendant, its agents, predecessors, successors, assigns, heirs, parent entities, subsidiary entities, officers, directors, shareholders, employees, attorneys, affiliated persons or entities, and all current and former tenants or lessees of the Facilities and/or Property (collectively, the "Released Parties"), of and from any and all legal or equitable claims, demands, liabilities, debts, judgments, damages, expenses,

actions, or causes of action arising under Title III of the ADA and/or any other federal, state, or local law governing access features and policies for persons with disabilities at public accommodations whether before any federal, state, or local agency, court of law, or in any other forum, and any and all claims that could have been alleged in the Action regarding the Facilities and/or Property. This release also includes all claims for attorney's fees and costs, expert fees and costs, or any other fee or cost incurred to date, with the exception of (a) the attorney's fees and costs set forth in Paragraph 1.1, above, and (b) any attorney's fees and costs resulting from any future action taken by any of the Parties to enforce the terms of this Agreement.

5.2    As a material inducement for Defendant to enter into this Agreement, Plaintiff represents and warrants that she is not aware of any pending tort, contract, or other legal claims against Defendant, other than the specific claims brought in this Action under Title III of the ADA, which are released under this Agreement.

5.3    Plaintiff represents and warrants that no portion of any of the matters released by this Agreement and no portion of any recovery or settlement to which they might be entitled have been assigned or transferred to any other person, firm, or corporation not a Party to this Agreement, in any manner, including by way of subrogation or operation of law or otherwise.

## 6.   **Notice**

6.1    Unless otherwise provided in this Agreement or by law, all notices or other communications required or permitted by this Agreement or by law to be served on or delivered to any Party to this Agreement shall be delivered as follows:

**To Plaintiff:**

The Law Office of Craig J. Ehrlich, LLC
1123 Zonolite Road, N.E. Suite 7-B
Atlanta, Georgia 30306
Fax: (855) 415-2480
craig@ehrlichlawoffice.com

**To Defendant:**

David S. Klein, Esq. and/or Hal J. Leitman, Esq.
Rountree Leitman & Klein, LLC
Century Plaza I
2987 Clairmont Road, Suite 350
Atlanta, Georgia 30329
Tel: (404) 584-1238
dklein@rlklawfirm.com
hleitman@rlklawfirm.com

6.2    Any Party may change such address for the purpose of this paragraph by giving timely written notice of such change to the other Parties to this Agreement in the manner provided in this paragraph.

## 7.   **Free Will**

The Parties acknowledge that each has had an opportunity to consult with counsel of their own choosing concerning the meaning, import, and legal

significance of this Agreement, and that each has done so to the extent desired. In addition, the Parties acknowledge that they each have read this Agreement, as signified by their signatures hereto, and are voluntarily executing the same after having had the opportunity to seek the advice of counsel for the purposes and consideration herein expressed.

8.   **Miscellaneous Terms and Conditions**

8.1   This Agreement contains the complete settlement agreement between the Parties. Any and all prior agreements, representations, negotiations, and understandings between the Parties, oral or written, express or implied, with respect to the subject matter hereof are hereby superseded and merged herein

8.2   This Agreement may be executed in counterparts or by copies transmitted by facsimile or email, all of which shall be given the same force and effect as the original.

8.3   This Agreement may be modified only by a written document signed by all of the Parties. No waiver of this Agreement or of any of the promises, obligations, terms, or conditions hereof shall be valid unless it is written and signed by the Party against whom the waiver is to be enforced.

8.4   This Agreement shall be binding upon the Parties hereto, their predecessors, successors, parents, subsidiaries, affiliates, assigns, agents, directors,

attorneys, officers, families, heirs, spouses, and employees.

8.5    If any provision of this Agreement shall be finally determined to be invalid or unenforceable under applicable law by a court of competent jurisdiction, that part shall be ineffective to the extent of such invalidity or unenforceability only, without in any way affecting the remaining parts of said provision or the remaining provisions of this Agreement.

8.6    The Parties acknowledge that they have reviewed this Agreement in its entirety and have had a full opportunity to negotiate its terms, and therefore waive all applicable rules of construction that any provision of this Agreement should be construed against its drafter and agree that all provisions of the Agreement shall be construed as a whole, according to the fair meaning of the language used.

8.7    Plaintiff represents that, other than this Action, she has not filed or authorized the filing of any complaints, charges, or lawsuits against Defendant with any federal, state, or local court, governmental agency, or administrative agency relating to the subject Facilities, and that if, unbeknownst to Plaintiff, such a complaint, charge, or lawsuit has been filed on her behalf, she or it will use her or its best efforts to cause it immediately to be withdrawn and dismissed with prejudice.

8.8    The parties and their Counsel agree to execute any and all further documents and perform any and all further acts reasonably necessary or useful in

carrying out the provisions and purposes of this Agreement.

8.9    In any action or other proceeding to enforce rights under this Agreement, the prevailing Party shall recover from the losing party all attorneys' fees, litigation expenses, and costs.

8.10   The Parties acknowledge that all Recitals and/or "WHEREAS" clauses preceding Paragraph 1 are incorporated as a material part of this Agreement.

8.11   This Agreement is entered into in, and shall be governed, construed and interpreted in accordance with the substantive laws of, the state of Georgia.

[signatures appear on the following page]

IN WITNESS WHEREOF, the Parties have executed this agreement as of the date(s) set forth below:

**"PLAINTIFF"**

_____
Jessica Blinkhorn

Date _06/02/21_____

**"DEFENDANT"**


_____
Vinings Jubilee Partners II, L.P.

By: _____ (Print Name)

As its: _____ (Title)

Date _____

13

IN WITNESS WHEREOF, the Parties have executed this agreement as of the date(s) set forth below:

**"PLAINTIFF"**

_____

Jessica Blinkhorn

Date _____

**"DEFENDANT"**

_____
Vinings Jubilee Partners II, L.P.

By: _____ (Print Name)

As its: _____ (Title)

Date _____

13

## **EXHIBIT 1**

1.  As necessary, additional accessible parking spaces will be created (and/or redistributed) on the Property so that the distribution of accessible parking spaces is in compliance with sections 206.2.1 and 208.3 of the 2010 ADAAG regulations. Newly created accessible parking spaces shall comply with all relevant provisions of section 502 of the 2010 ADAAG standards.

2.  Where necessary, all accessible parking spaces on the Property will be properly marked (or remarked) so that they have appropriate dimensions, in compliance with section 502.2 of the 2010 ADAAG standards.

3.  The access aisle adjacent to the accessible parking space on the Property most proximate to Unit 107 of the Facilities will be modified to remove the ramp from within its boundaries and install a curb-cut ramp (or parallel-cut ramp, if there in insufficient depth to provide a level landing for a curb-cut ramp) at the end of said access aisle, in compliance with section 502.4 of the 2010 ADAAG standards. The newly-installed curb-cut ramp (or parallel-cut ramp) shall comply with section 406 of the 2010 ADAAG standards.

4.  The access aisle adjacent to the accessible parking space on the Property most proximate to Unit 107 of the Facilities will be remarked in compliance with section 502.3 of the 2010 ADAAG standards.

1



5.  The access aisle adjacent to the accessible parking space on the Property most proximate to Unit 115 of the Facilities will be modified to remove the ramp from within its boundaries and install a curb-cut ramp (or parallel-cut ramp, if there in insufficient depth to provide a level landing for a curb-cut ramp) at the end of said access aisle, in compliance with section 502.4 of the 2010 ADAAG standards. The newly-installed curb-cut ramp (or parallel-cut ramp) shall comply with section 406 of the 2010 ADAAG standards.

6.  The ground surface within the required maneuvering clearances at the door to the entrance of Unit 115 of the Facilities will be modified so that it is level, in compliance with section 404.2.4.4 of the 2010 ADAAG standards.

7.  The accessible parking space on the Property most proximate to Unit 150 of the Facilities shall be resurfaced or otherwise modified so that it (a) has a slope and cross-slope that is not in excess of 1:48 (one to forty-eight), in compliance with section 502.4 of the 2010 ADAAG standards, and (b) its adjacent access aisle shall be remarked in compliance with section 502.3 of the 2010 ADAAG standards. In the event Defendant elects to relocate this accessible parking space to more level ground in order to comply with this provision, such relocated accessible parking space shall be on the shortest accessible route to the entrances of the Facility where the existing space is located (as is readily

achievable), and shall otherwise comply with section 502 of the 2010 ADAAG standards.

8.   The ground surface within the required maneuvering clearances at the door to the entrance of Unit 150 of the Facilities shall be modified so that it is level, in compliance with section 404.2.4.4 of the 2010 ADAAG standards.

9.   The access aisle adjacent to the accessible parking space on the Property most proximate to Unit 160 of the Facilities will be modified to remove the ramp from within its boundaries and install a curb-cut ramp (or parallel-cut ramp, if there in insufficient depth to provide a level landing for a curb-cut ramp) at the end of said access aisle, in compliance with section 502.4 of the 2010 ADAAG standards. The newly-installed curb-cut ramp (or parallel-cut ramp) shall comply with section 406 of the 2010 ADAAG standards.

10.  The accessible route on the Property that leads to the accessible entrances of Unit 160 of the Facilities shall be resurfaced so that it has a cross-slope that is no greater than 1:48 (one to forty-eight), in compliance with section 403.2 of the 2010 ADAAG standards.

11.  The access aisle adjacent to the accessible parking space on the Property most proximate to Unit 240 of the Facilities will be modified so that it adjoins an accessible route, in compliance with section 502.3 of the 2010 ADAAG

3

standards. This accessible route shall include the installation of a curb-cut (or parallel-cut) ramp that complies with section 406 of the 2010 ADAAG standards adjacent to said access aisle.

12. The access aisle adjacent to the accessible parking space on the Property most proximate to Unit 243 of the Facilities will be modified (a) so that it is properly marked with permissible dimensions, in compliance with sections 502.3.1 and 502.3.3 of the 2010 ADAAG standards, and (b) to remove the ramp from within its boundaries and install a curb-cut ramp (or parallel-cut ramp, if there in insufficient depth to provide a level landing for a curb-cut ramp) at the end of said access aisle, in compliance with section 502.4 of the 2010 ADAAG standards. The newly-installed curb-cut ramp (or parallel-cut ramp) shall comply with section 406 of the 2010 ADAAG standards.

13. The signage for the accessible parking space on the Property most proximate to Unit 405 of the Facilities will be reinstalled at a permissible height, in compliance with section 502.6 of the 2010 ADAAG standards.

14. The access aisle adjacent to the accessible parking space on the Property most proximate to Unit 405 of the Facilities will be modified (a) so that it is properly marked with permissible dimensions, in compliance with sections 502.3.1 and 502.3.3 of the 2010 ADAAG standards, and (b) to remove the

ramp from within its boundaries and install a curb-cut ramp (or parallel-cut ramp, if there in insufficient depth to provide a level landing for a curb-cut ramp) at the end of said access aisle, in compliance with section 502.4 of the 2010 ADAAG standards. The newly-installed curb-cut ramp (or parallel-cut ramp) shall comply with section 406 of the 2010 ADAAG standards.

15. The accessible parking space on the Property most proximate to Unit 472 of the Facilities and its adjacent access aisle shall be resurfaced so that each has a slope and cross-slope that is no greater than 1:48 (one to forty-eight), in compliance with section 502.4 of the 2010 ADAAG standards. The access aisle adjacent to the accessible parking space on the Property most proximate to Unit 472 of the Facilities will be further modified to remove the ramp from within its boundaries and install a curb-cut ramp (or parallel-cut ramp, if there in insufficient depth to provide a level landing for a curb-cut ramp) at the end of said access aisle, in compliance with section 502.4 of the 2010 ADAAG standards. The newly-installed curb-cut ramp (or parallel-cut ramp) shall comply with section 406 of the 2010 ADAAG standards.

16. To the extent that it is readily achievable, an accessible route connecting the Facilities shall be created on the Property, in compliance with section 206.2.2 of the 2010 ADAAG standards. This shall include modifying or replacing the

existing curb ramps on the accessible routes on the Property so that their slopes and cross-slopes are no greater than 1:10 (one to ten), in compliance with sections 405.2 and 406.3 of the 2010 ADAAG standards. Newly-installed curb ramps on the Property shall comply with section 406 of the 2010 ADAAG standards.

17.  Plaintiff has alleged that the interior of Unit 150 of the Facilities has a bar lacking any portion of which that has a maximum height of 34" (thirty-four inches) from the finished floor, in violation of section 902.3 of the 2010 ADAAG standards. The Parties stipulate and agree that it is not readily achievable to modify the bar to comply with said standard, and as a readily achievable alternative, accessible seating will be made available within reasonable proximity to the bar offering dining surfaces provided for consumption of food or drink that comply with sections 226.1, 306 and 902.2 of the 2010 ADAAG standards.

18.  The restrooms in Unit 150 of the Facilities will be modified so that the sinks and vanities provide for adequate knee and toe clearance thereunder, in compliance with section 606 of the 2010 ADAAG standards.



6

19.  The soap dispensers in the restrooms in Unit 150 of the Facilities will be relocated within the prescribed vertical reach ranges set forth in section 308.2.1 of the 2010 ADAAG standards.

20.  The accessible toilet stall doors in the restrooms in Unit 150 of the Facilities will be modified so that (a) they are self-closing, in compliance with section 604.8.2.2 of the 2010 ADAAG standards, (b) the locks on said stall doors do not require pinching, twisting and an opening force in excess of 5 lbs. (five pounds), in compliance with sections 309.4 and 404.2.7 of the 2010 ADAAG standards.

21.  The toilet paper dispensers in the restrooms in Unit 150 of the Facilities shall be reinstalled within the permissible reach ranges set forth in section 604.7 of the 2010 ADAAG standards.

22.  The hand operated flush controls on the commodes in the accessible toilet stalls in the restrooms in the Facility will be relocated on the open side of the accessible stalls, in compliance with section 604.6 of the 2010 ADAAG standards.

